IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

DARRYL A. VACHON,

     Plaintiff,

vs.

CASE NO.: 2013-CA-003570
DIVISION: J

THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY,

     Defendant.

_____/

### AMENDED COMPLAINT

Plaintiff, DARRYL A. VACHON, sues Defendant, THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, and alleges:

1.     This is an action for compensatory damages in excess of the jurisdictional limits of this Court.

2.     At all times material hereto, DARRYL A. VACHON was a resident of Polk County, Florida.

3.     At all relevant times, Defendant was a foreign insurance corporation licensed under the laws of Florida.

4.     Defendant was authorized to and was selling insurance policies and conducting business in Florida and maintained or employed authorized agents to sell and deliver insurance policies in Lakeland, Polk County, Florida.

5.     General personal jurisdiction over Defendant is proper under the Florida Long Arm Statute and constitutional minimum contacts so that Defendant could be haled into court in Florida for any litigated dispute, since Defendant engaged in substantial and not isolated activity

### EXHIBIT 1

in Florida, including but not limited to regularly promoting and selling its insurance policies through agents located in Florida.

6.      Specific personal jurisdiction over Defendant to be subject to Florida courts for this case is proper under the Florida Long Arm Statute and constitutional minimum contacts, since Defendant:

   a.   operated, conducted, engaged in and carried on a business in Florida by regularly promoting and selling its insurance policies through agents located in Florida, including the policy in question (Florida Statute §48.193(1)(a)(1));

   b.   contracted to insure a person, property or risk located within the State of Florida at the time of entering into the contract, including the policy in question (Florida Statute §48.193(1)(a)(4)); and

   c.   breached a contract in Florida by failing to perform acts required to be performed in Florida by the terms of the insurance contract, including the policy in question.  (Florida Statute §48.193(1)(a)(7));

7.      Venue is appropriate in Hillsborough County, Florida, because Defendant has offices and agents to transact business and is writing insurance policies in Hillsborough County, Florida, the underlying motor vehicle crash occurred in Hillsborough County, Florida, and the trial of the uninsured/underinsured portion of this matter occurred in this Court.

8.      On June 4, 2011, Joseph Christopher Hildenbrand, was operating a 1999 Ford Explorer on Memorial Highway in Tampa, Hillsborough County, Florida.

9.      At said time and place, Joseph Christopher Hildenbrand so negligently operated said vehicle so that it collided with a vehicle operated by DARRYL A. VACHON.

10.     As a direct and proximate result of the above-described negligence, DARRYL A. VACHON suffered and/or sustained in the past, and will suffer and/or sustain in the future:

   a.   Significant and permanent loss of an important bodily function, permanent injury within a reasonable degree of medical probability and/or significant and permanent scarring or disfigurement.

b.   Pain, suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life.

c.   The expense and/or reasonable value of medical and nursing care and treatment.

d.   The loss of earnings, working time and/or earning capacity.

e.   The damage to and loss of use of personal property and other miscellaneous expense.

11.   All conditions precedent have been fulfilled, waived, or discharged.

## COUNT I
### (Uninsured/Underinsured Motorist Coverage)

12.   Plaintiff adopts and incorporates the allegations of paragraphs 1-11.

13.   At all times material hereto, Defendant provided uninsured/underinsured (UM) coverage to Plaintiff by virtue of policy number 985277618 101 1, issued to Carol Vachon.  Said policy was in full force and effect and thus provided UM coverage to Plaintiff at the time of the subject accident.  A copy of said policy is attached hereto as Exhibit A.

14.   The damages sustained by Plaintiff exceed the liability coverage available to Joseph Christopher Hildenbrand.   Plaintiff made a demand upon Defendant to pay its underinsured motorist benefits.

15.   Joseph Christopher Hildenbrand was an underinsured driver, in that he did not maintain sufficient insurance to compensate Plaintiff for damages to which he is legally entitled as result of the injuries caused by the crash.

16.   For purposes of these claims and under the terms of the Policy, Defendant stands in the shoes of Joseph Christopher Hildenbrand.

17.   Plaintiff timely reported the claim to Defendant and made an appropriate demand for his underinsured motorist benefits resulting from the crash to Defendant.

18.     Defendant unjustifiably refused to honor its contractual obligations by failing to timely pay the available UM/UIM benefits owed to Plaintiff.

WHEREFORE, Plaintiff, DARRYL A. VACHON, demands judgment against Defendant for the full UM benefits under the Policy, damages, costs, pre-judgment interest on expenses incurred, and post-judgment interest, together with such other and further relief this Court deems equitable and just.

## COUNT II
### (Statutory Bad Faith Pursuant To Fla. Stat. §624.155)

19.     Plaintiff adopts and incorporates the allegations of paragraphs 1-11.

20.     On July 12, 2012, Plaintiff filed a Civil Remedy Notice of Insurer Violations ("CRN") with the Florida Department of Insurance and served a copy of the CRN upon Defendant.  A copy of the CRN is attached hereto as Exhibit "B".

21.     At all times material hereto, the Defendant had a duty, pursuant to Florida Statute §624.155, to exercise good faith in the provision of coverage, investigation, negotiation, and settlement of the claims by Plaintiff under the Policy and to refrain from engaging in unfair claim settlement practices.

22.     Defendant breached its duties to Plaintiff, in violation of Florida Statute §624.155, by one or more of, but not limited to, the following ways:

      a.      failing to attempt, in good faith, to settle Plaintiff's uninsured motorist claim when, under all of the circumstances, it could have and should have done so, had it acted fairly and honestly and with due regard for Plaintiff's interests, who was an insured, in violation of Florida Statute §624.155(1)(b)(1);

      b.      failing to properly train adjusters and claims personnel;

      c.      placing its own financial interests before that of Plaintiff;

      d.      engaging in unfair claims settlement practices in violation of Florida

Statute §626.9541(1)(i)(3) c, d, f, g, and h.  Specifically, Defendant:

1. failed to acknowledge and act promptly upon communications with respect to Plaintiff's uninsured motorist claim, including its failure to properly respond to Plaintiff's multiple written requests for coverage information and demands for payment of all uninsured motorist benefits under the Policy;

2. denied Plaintiff's uninsured motorist claim without conducting a reasonable investigation based on the available information, even disregarding Plaintiff's repeated offers to assist Defendant in its investigation;

3. failed to provide a reasonable written explanation of the basis in the insurance policy, in relation to the facts or applicable law, for its lack of any reasonable offer of settlement; and

4. failed to promptly notify Plaintiff of any additional information necessary for the processing of the uninsured motorist claim and to clearly explain the nature of the requested information and the reasons why such information is necessary.

23.    The acts complained of herein constituted Defendant's general business practices in that they (a) were expressions of, and in compliance with, standard company practices and procedures, (b) are said by Defendant to be in conformity with what it contends are standard and good faith claims practices, and consequently or incidentally, (c) occur with such frequency as to indicate general business practices.

24.    Defendant failed to cure its bad faith and more than sixty (60) days has passed since the filing and service date of the CRN.

25.    As a direct and proximate result of Defendant's actions and/or inactions as set forth above, Plaintiff has been damaged.

26.    Defendant's violation of Florida Statute §624.155 has caused damages to Plaintiff of interest on unpaid benefits, pre-judgment interest accrued since the date of Defendant's violation; attorney's fees incurred by Plaintiff in the prosecution of his claim for

uninsured motorist benefits and pre-judgment interest thereon; costs incurred in the prosecution of Plaintiff's claim for uninsured motorist benefits, including expert witness fees; costs incurred in the prosecution of Plaintiff's claim for violation of Florida Statute §624.155; and post-judgment interest.

27.     As a further direct and proximate result of Defendant's failure to act in good faith and statutory violations alleged above, Plaintiff had to retain the services of the undersigned attorneys and contracted with them for the payment of their attorney's fees to bring this action and recover the excess damages owed by Defendant. By operation of law, including Florida Statute §627.428, Defendant will be obligated to pay those fees upon the successful conclusion of Plaintiff's claim.

28.     As a result of Defendant's failure to act in good faith and statutory violations alleged above, Plaintiff is entitled to recover the total amount of his damages pursuant to Florida Statute §627.727(10), including all damages suffered as a result of the crash, Defendant's failure to act in good faith and the statutory violations alleged above.

WHEREFORE, Plaintiff, DARRYL A. VACHON, demands judgment against Defendant for the total damages suffered by Plaintiff, pre and post-judgment interest, attorneys' fees pursuant to Florida Statute §§624.155, 627.727(10), and 627.428, costs, and any other relief this Court deems proper and just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by e-mail to Scott B. Albee, Esquire and Marquiche Steadman, Esquire, Fulmer LeRoy & Albee, PLLC, 11300 4th Street North, Ste. 100, St. Petersburg, FL 33716, eservicetpa@fulmerleroy.com, salbee@fulmerleroy.com, msteadman@fulmerleroy.com; Jack R. Reiter, Esquire and Jordan S.

Kosches, Esquire, GrayRobinson, P.A., 333 SE Second Avenue, Ste. 3200, Miami, FL 33131,

jack.reiter@gray-robinson.com, jordan.kosches@gray-robinson.com, this _____ day of _____,

2020.

SAUNDERS LAW GROUP

s/ K.C. Bouchillon
K.C. Bouchillon
Florida Bar No. 0999458
PO Box 1279
Bartow, FL 33831
(863) 533-6200 – telephone
(863) 533-5800 – facsimile
KC@saunders-law.com – primary e-mail
christie@saunders-law.com – secondary e-mail
Attorney for Plaintiff

91011

**CAROL VACHON**
**985277618-101-1**
**EFFECTIVE 02-15-2011 TO 08-15-2011**

This is to Certify that, to the best of my knowledge the attachment is a full, true and complete copy of the original policy as issued by this company.

_____ _Rick L. Wagner_ _____
Authorized Representative

_____ _August 3, 2011_ _____
Dated this Day

**EXHIBIT A**



**TRAVELERS**
of Florida

# Automobile Policy Continuation Declarations

## 1. Named Insured
CAROL VACHON
4634 MUSKET DR
LAKELAND FL 338100120

## Your Agency's Name and Address
ALL FLORIDA INSURANCE
3228 W SR 426 STE 1032
OVIEDO FL 32765

| | | | |
|---|---|---|---|
| **Your Policy Number** | 985277618 101 1 | **For Policy Service Call** | 407.671.6628 |
| **Your Account Number** | 985277618 | **For Claim Service Call** | 1.800.CLAIM33 |

## 2. Premium
**Your Total Premium for the Policy Period is $1,441.51.**
**The policy period is from February 15, 2011 to August 15, 2011.**

## 3. Your Vehicles
1. 1999 TOYOT CAMRY CE/C
2. 2009 TOYOT COROLLA BA
3. 1998 NISSA PATHFINDER

## Identification Numbers
4T1BG22K8XU414589
JTDBL40E49J016969
JN8AR05S1WW271700

## 4. Coverages, Limits of Liability and Premiums
Insurance is provided only where a premium is shown for the coverage.

| | | VEHICLE 1 | VEHICLE 2 | VEHICLE 3 |
|---|---|---|---|---|
| | | 99 TOYOT CAMRY CE/C | 09 TOYOT COROLLA BA | 98 NISSA PATHFINDER |
| A. | Bodily Injury $50,000 each person $100,000 each accident | $ 136 | $ 143 | $ 143 |
| B. | Property Damage $50,000 each accident | $ 70 | $ 74 | $ 82 |
| D1. | Uninsured Motorists Non-Stacked $25,000 each person $50,000 each accident See Endorsement A09051 | $ 33 | $ 33 | $ 33 |

Continued on next page

PL-7782 Rev. 08-07   Page 1 of 5

003768/00502 F3115CHD 7275 01/06/11



**TRAVELERS**J
of Florida

## 4. Coverages, Limits of Liability and Premiums (continued)

|  |  | 99 TOYOT<br>CAMRY CE/C | 09 TOYOT<br>COROLLA BA | 98 NISSA<br>PATHFINDER |
|---|---|---|---|---|
| E. | Collision<br>Actual Cash Value less............<br>$250 deductible<br>See Endorsement A09014 | $    95 | $   158 | $    97 |
| F. | Comprehensive<br>(Other than Collision)<br>Actual Cash Value less............<br>$250 deductible<br>See Endorsement A09014 | $    27 | $    32 | $    28 |
| G. | Extended Transportation Expense<br>$30 per day/$900 maximum..........<br>See Endorsement A09014 | $    14 | $    14 | $    14 |
| I. | Towing and Labor Costs<br>$75 per disablement...............<br>| $     6 | $     6 | $     6 |
| Q. | Personal Injury Protection<br>$10,000 each person each accident..<br>See Endorsement A09025 | $    59 | $    67 | $    53 |

**Subtotals for your vehicles**............ $   440      $   527      $   456

**Total Premium for This Policy:**        $ 1,423

FL Catastrophe Fund Assessment          18.51

**Total Amount:**                                              **$1,441.51**

Continued on next page



TRAVELERS
of Florida

```
Named Insured     CAROL VACHON
Policy Number     985277618 101 1
Policy Period     February 15, 2011 to August 15, 2011.
Issued On Date    January 6, 2011
```

## 5. Information Used to Rate Your Policy

**Discounts and Advantages**

Early Quote Advantage

Home Ownership Discount

Multiple Cars on Policy

| | | | |
|---|---|---|---|
| Anti-Theft Discount | 99 TOYOT CAMRY CE/C | 09 TOYOT COROLLA BA | 98 NISSA PATHFINDER |
| Anti-Lock Discount | 99 TOYOT CAMRY CE/C | 09 TOYOT COROLLA BA | 98 NISSA PATHFINDER |
| Passive Restraint Discount | 99 TOYOT CAMRY CE/C | 09 TOYOT COROLLA BA | 98 NISSA PATHFINDER |
| Good Student Discount | STEPHANIE | | |
| Driver Training Discount | STEPHANIE | | |

**Accidents and/or Traffic Violations Listed Below:**

| | |
|---|---|
| Accidents | 02/15/10 STEPHANIE |

| **Drivers** | DATE OF BIRTH | SEX | MARITAL STATUS |
|---|---|---|---|
| 1.  CAROL | 12-18-65 | Female | Married |
| 2.  DARYLL | 11-12-63 | Male | Married |
| 3.  STEPHANIE | 08-08-91 | Female | Single |

| **Vehicles** | USE OF VEHICLE | LOCATION OF VEHICLE |
|---|---|---|
| 1.  99 TOYOT CAMRY CE/C | Commute | LAKELAND FL |
| 2.  09 TOYOT COROLLA BA | Commute | LAKELAND FL |
| 3.  98 NISSA PATHFINDER | Pleasure | LAKELAND FL |

Continued on next page



**TRAVELERS** J
of Florida

## 5. Information Used to Rate Your Policy (continued)

It is important that the above information is correct to ensure that your policy is
properly rated.  If there are errors or changes to this information, please notify
your Travelers of Florida representative immediately.

## 6. Other Information

**Loss Payees**

09 TOYOT COROLLA BA            MID FLORIDA
VIN # JTDBL40E49J016969        PO BOX 8008
                               LAKELAND,FL 33802

**Your Insurer**
The Travelers Home and Marine Insurance Company
One Tower Square, Hartford, CT 06183

**Policy Endorsements**

A09014 Amendment of Policy Provisions - Florida
A09025 Personal Injury Protection - Florida
A09051 Uninsured Motorists Coverage - Florida (Non-Stacked)

**Policy Edition   6           Policy Form   101           Issued on     01/06/11**

Thank you for insuring with Travelers of Florida.  We appreciate your business.
If you have any questions about your insurance, please contact your Travelers
of Florida representative.

## FOR YOUR INFORMATION

Children & air bags. . . it's as easy as 1 - 2 - 3
1. Never put a child seat (those used with infants) in the front seat
   of a car with air bags.
2. Make sure all children are buckled up no matter where they sit.
   Unbuckled children can be hurt or killed by an air bag.
3. The rear seat (those with seat belts) is the safest place for children
   of any age to ride.

Continued on next page



**TRAVELERS**
of Florida

| | |
|---|---|
| Named Insured | CAROL VACHON |
| Policy Number | 985277618 101 1 |
| Policy Period | February 15, 2011 to August 15, 2011. |
| Issued On Date | January 6, 2011 |

## FOR YOUR INFORMATION (continued)

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

If you have an anti-theft device in your vehicle, it may be one that qualifies for a discount on the Comprehensive Coverage of your policy.

Additionally countersigned by Sherri Langston-Powers of The Travelers Home and Marine Insurance Company.

For Claim Service Call 1-800-CLAIM33 24 Hours

Your premium includes a surcharge for an at fault accident. You are entitled to the reimbursement of such amount if you can demonstrate that the operator involved in the accident was: 1) Lawfully parked; 2) Reimbursed by, or on behalf of, a person responsible for the accident or has a judgment against such person; 3) Struck in the rear by another vehicle headed in the same direction and was not convicted of a moving traffic violation in connection with the accident; 4) Hit by a "hit-and-run" driver, if the accident was reported to the proper authorities within 24 hours after discovering the accident; 5) Not convicted of a moving traffic violation in connection with the accident, but the operator of the other automobile involved in such accident was convicted of a moving traffic violation; 6) Finally adjudicated not to be liable by a court of competent jurisdiction; 7) In receipt of a traffic citation which was dismissed or nolle prossed; or 8) Not at fault as evidenced by a written statement from the insured establishing facts demonstrating lack of fault which are not rebutted by information in the insurer's file from which the insurer in good faith determines that the insured was substantially at fault.



# Automobile Policy Booklet

# from Travelers

TOC6000

## YOUR PERSONAL AUTO POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
  **Your Name and Address**
  **Your Auto or Trailer**
  **Policy Period**
  **Coverages and Amounts of Insurance**

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |

**LIABILITY**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 4 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**MEDICAL PAYMENTS**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 5 |
| Limit of Liability | 5 |
| Other Insurance | 5 |

**UNINSURED MOTORISTS**

| | |
|---|---|
| Insuring Agreement | 6 |
| Exclusions | 6 |
| Limit of Liability | 7 |
| Other Insurance | 7 |
| Arbitration | 7 |

**DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 8 |
| Transportation Expenses | 9 |
| Exclusions | 9 |
| Limit of Liability | 10 |
| Payment of Loss | 10 |
| Loss Payable Clause | 10 |
| No Benefit to Bailee | 10 |
| Other Insurance | 10 |
| Appraisal | 10 |

**DUTIES AFTER AN ACCIDENT OR LOSS**

| | |
|---|---|
| General Duties | 11 |
| Additional Duties for Uninsured Motorists Coverage | 11 |
| Additional Duties for Collision and Comprehensive Coverages | 11 |

**GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 11 |
| Changes | 11 |
| Fraud | 11 |
| Legal Action Against Us | 11 |
| Our Right to Recover Payment | 12 |
| Policy Period and Territory | 12 |
| Termination | 12 |
| Transfer of your Interest in this Policy | 13 |
| Two or More Auto Policies | 13 |

**Edition 6 of Policy Forms 101 and LP**

# PERSONAL AUTO POLICY

## Travelers Property Casualty Companies
**Hartford, Connecticut**
**(Each a Stock Insurance Company)**

---

## AGREEMENT

---

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages you have selected. These are shown by premium entries in the Declarations. The Declarations is a part of this policy.

---

## DEFINITIONS

---

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

B. "We", "us" and "our" refer to the Company shown in the Declarations providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto; or

   b. a pickup or van.

This provision (J.2.) applies only if:

   a. you acquire the vehicle during the policy period;

   b. you ask us to insure it within 30 days after you become the owner; and

   c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

   a. you wish to add or continue Damage to Your Auto Coverages; or

   b. it is a pickup or van used in any "business" other than farming or ranching.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any

other vehicle described in this definition which is out of normal use because of its:

a. breakdown;     d. loss; or

b. repair;        e. destruction.

c. servicing;

## LIABILITY
### Coverage A - Bodily In jury
### Coverage B - Property Damage

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" (Coverage A) or "property damage" (Coverage B) for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for these coverages has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in these coverages means:

1. You or any "family member" for the owner-ship, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or or-ganization but only with respect to legal responsibility for acts or omissions of a per-son for whom coverage is afforded under these Liability Coverages.

4. For any auto or "trailer", other than "your covered auto", any other person or or-ganization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under these Liability Coverages. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds re-quired because of an accident, including re-lated traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not ex-ceed our limit of liability for these coverages.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverages for any person:

1. Who intentionally causes "bodily injury" or "property damage".

2. For damage to property owned or being transported by that person.

3. For damage to property:
   a. rented to;
   b. used by; or
   c. in the care of;

   that person.

Edition 6 of Policy forms
101 and LP

This exclusion (A.3.) does not apply to damage to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a.  selling;            d.  storing; or

   b.  repairing;          e.  parking;

   c.  servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a.  you;

   b.  any "family member"; or

   c.  any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

   a.  private passenger auto;

   b.  pickup or van that you own; or

   c.  "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

   a.  is an insured under a nuclear energy liability policy; or

   b.  would be an insured under a nuclear energy liability policy but for its ter-

mination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a.  American Nuclear Insurers;

   b.  Mutual Atomic Energy Liability Underwriters; or

   c.  Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverages for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto", which is:

   a.  owned by you; or

   b.  furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   a.  owned by any "family member"; or

   b.  furnished or available for the regular use of any "family member".

   However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

   a.  owned by a "family member"; or

   b.  furnished or available for the regular use of a "family member".

### LIMIT OF LIABILITY

#### A.  Single Liability Limit

1. If the Declarations show a single limit of liability for Coverage A and Coverage B combined, this limit is our maximum limit of liability for all damages for "bodily injury" and "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

   a.  "Insureds";

   b.  Claims made;

   c.  Vehicles or premiums shown in the Declarations; or

Edition 6 of Policy forms
101 and LP

d. Vehicles involved in the auto accident.

2. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (A.2.) will not change our total limit of liability.

## B. Split Liability Limits

If the Declarations show separate limits of liability for Coverage A and Coverage B, the limit of liability shown in the Declarations for each person for Coverage A is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Coverage A is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Coverage B is our maximum limit of liability for all "property damage" resulting from any one auto accident. These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

# MEDICAL PAYMENTS
## Coverage C

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred within 3 years from the date of the accident.

B. "Insured" as used in this coverage means:

1. You or any "family member":

a. while "occupying"; or

b. as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

## EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member"; or

   b. furnished or available for the regular use of any "family member".

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

   We will, however, double the applicable limit of liability for you or any "family member" if wearing a properly installed seat belt at the time of the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Coverage A or Coverage D.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Coverage A or Coverage D.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## UNINSURED MOTORISTS
## Coverage D

### INSURING AGREEMENT

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this coverage means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limits for bodily injury liability must be less than the minimum limits for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

    a. you or any "family member";

    b. a vehicle which you or any "family member" are "occupying"; or

c. "your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

    a. denies coverage; or

    b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

3. While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

**B.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

## LIMIT OF LIABILITY

### A. Single Limit

If the Declarations show a single limit of liability for Coverage D, this limit is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

### B. Split Limits

If the Declarations show separate limits of liability for each person and each accident, the limit of liability shown for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**C.** Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who

may be legally responsible. This includes all sums paid under Coverage A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

**D.** Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Coverage A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

**A.** If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability

specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision.

If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**D.** Instead of this method, we and the "insured" may agree to use another method of arbitration.

## DAMAGE TO YOUR AUTO
### Coverage E - Collision
### Coverage F - Comprehensive
### (Other than Collision)
### Coverage G - Rental Reimbursement
### Coverage I - Towing and Labor Costs

### INSURING AGREEMENT

**A. Collision and Comprehensive (Other than Collision).** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. "Collision" only if the Declarations indicate that Coverage E - Collision is provided for that auto.

2. Other than "collision" only if the Declarations indicate that Coverage F - Comprehensive is provided for that auto.

If there is loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B. Rental Reimbursement.** When there is a loss to one of "your covered autos" described in the Declarations for which a specific premium charge indicates that Coverage G - Rental Reimbursement is afforded:

We will reimburse you for expenses you incur to rent a substitute auto. This coverage applies only if:

1. The auto is withdrawn from use for more than 24 hours; and

2. The loss is caused by "collision" or covered under Coverage F - Comprehensive of this policy.

However, this coverage does not apply when there is a total theft of the auto.

Our payment will be limited to that period of time reasonably required to repair or replace the auto. We will pay up to the amount per day to a maximum amount as shown in the Declarations.

**C. Towing and Labor Costs.** We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the limit of liability shown in the Declarations for Coverage I - Towing and Labor Costs as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

**D.** "Collision" means the upset of "your covered auto" or its impact with another vehicle or object. Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision" you may elect to have it considered a loss caused by "collision".

**E.** "Non-owned auto" means any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member". However, "non-owned auto" does not include any vehicle used as a temporary substitute for a vehicle you own which is out of normal use because of its:

1. Breakdown;    4. Loss; or
2. Repair;    5. Destruction.
3. Servicing;

## TRANSPORTATION EXPENSES

In addition, under Coverage F we will pay up to $15 per day, to a maximum of $450, for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto". We will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and
2. Ending when "your covered auto" is returned to use or when we pay or offer to pay for its loss.

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" which occurs while it is used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.
2. Damage due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical or electrical breakdown or failure; or
   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto".
3. Loss due to or as a consequence of:
   a. radioactive contamination;
   b. discharge of any nuclear weapon (even if accidental);
   c. war (declared or undeclared);

d. civil war;
e. insurrection; or
f. rebellion or revolution.

4. Loss to equipment designed for the reproduction of sound. This exclusion (4.) does not apply if the equipment is permanently installed in "your covered auto" or any "non-owned auto".
5. Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.
6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:
   a. acquire during the policy period; and
   b. ask us to insure within 30 days after you become the owner.
7. Loss to any "non-owned auto" or any vehicle used as a temporary substitute for a vehicle you own, when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.
8. Loss to:
   a. TV antennas;
   b. awnings or cabanas; or
   c. equipment designed to create additional living facilities.
9. Loss to any of the following or their accessories:
   a. citizens band radio;
   b. two-way mobile radio;
   c. telephone; or
   d. scanning monitor receiver.

   This exclusion (9.) does not apply if the equipment is permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto". This opening must be normally used by the auto manufacturer for the installation of a radio.
10. Loss to equipment designed or used for the detection or location of radar.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. selling;  d. storing; or

b. repairing;  e. parking;

c. servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will mail the loss payee written notice at least 10 days before the effective date of cancellation.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" or any vehicle used as a temporary substitute for a vehicle you own shall be excess over any other collectible insurance.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

Edition 6 of Policy forms
101 and LP

## DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

### ADDITIONAL DUTIES FOR UNINSURED MOTORISTS COVERAGE

A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit and run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

### ADDITIONAL DUTIES FOR COLLISION AND COMPREHENSIVE COVERAGES

A person seeking coverage for Collision or Comprehensive (Other than Collision) must also:

1. Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change according to the manuals then in use by us.

We may revise this policy form to provide more coverage without additional premium charge. If we do this your policy will automatically provide the additional coverage as of the date the revision is effective in your state.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under the Liability Coverages, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply, under the Damage to Your Auto Coverages, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy period, and each successive policy period, begins and ends at 12:01 a.m. standard time at your address.

**C.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A.** **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown there:

   a. at least 10 days notice:
      (1) if cancellation is for nonpayment of premium; or
      (2) if notice is mailed during the first 60 days this policy is in effect and this is not a continuation policy; or

   b. at least 30 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:
      (1) any driver who lives with you; or
      (2) any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred:
      (1) during the policy period; or
      (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

4. Nonpayment of Premium. Nonpayment of premium shall mean failure to pay any premium or premium installment when due whether payable directly to us or through a premium financing plan or credit extension.

**B.** **Termination.** If we decide not to continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown there. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is

Edition 6 of Policy forms
101 and LP

the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

C. **Automatic Termination.** If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. **Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our

manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the next anniversary of the policy's original effective date.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This policy is signed for the member company of Travelers which is the insurer under this policy.

*Wendy C. Skjerven*

Wendy C. Skjerven
Corporate Secretary

*Gregory C. Toczydlowski*

Gregory C. Toczydlowski
President
Personal Insurance

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1985

## AMENDMENT OF POLICY PROVISIONS - FLORIDA

### I. DEFINITIONS

The provision J.4. of the definition of "your covered auto" (J) is replaced by the following:

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;  d. loss; or

b. repair;  e. destruction.

c. servicing;

This provision (J.4.) does not apply to the Damage To Your Auto Section.

### II. LIABILITY

The Liability Section is amended as follows:

A. The following is added as an additional exclusion:

We do not provide Liability Coverages for any person for "bodily injury" to anyone related to that person who is a resident of the same household.

B. The Other Insurance provision is replaced by the following:

#### OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. However, we will provide primary insurance for a vehicle you do not own if the vehicle is leased by you under a written lease agreement and you have agreed to provide coverage for your operation of the vehicle.

### III. MEDICAL PAYMENTS

A. The following paragraph is added to Insuring Agreement A:

We will pay only those expenses not paid or payable under Personal Injury Protection Coverage that applies to the accident. We will

not pay expenses that fall within the Personal Injury Protection Coverage deductible.

B. The last paragraph of provision A. of the Limit of Liability section is deleted.

### IV. DAMAGE TO YOUR AUTO

The Damage To Your Auto section is replaced by the following:

#### DAMAGE TO YOUR AUTO

**Coverage E - Collision**

**Coverage F - Comprehensive (Other than Collision)**

**Coverage G - Extended Transportation Expenses**

**Coverage I - Towing and Labor Costs**

#### INSURING AGREEMENT

A. **Collision and Comprehensive (Other than Collision).** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment. We will pay for such loss to "your covered auto" minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. "Collision" only if the Declarations indicate that Coverage E - Collision is provided for that auto.

2. Other than "collision" only if the Declarations indicate that Coverage F - Comprehensive is provided for that auto.

If there is such a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations. We will not subtract any deductible amount from the amount we will pay for a loss to a "non-owned auto".

We will pay under Comprehensive (Other than Collision) Coverage for the cost of repairing or replacing the damaged windshield on "your covered auto" without a deductible. We will pay only if the Declarations indicate that

Page 1 of 7 Endorsement Symbol Number A09014

Coverage F - Comprehensive is provided for that auto.

B. **Extended Transportation Expenses.** When there is a loss to a "your covered auto" described in the Declarations for which a specific premium charge indicates that Coverage G - Extended Transportation Expenses is afforded, or to a "non-owned auto", we will pay, without application of a deductible, up to the amount per day to a maximum amount as shown in the Declarations for:

1. Transportation expenses incurred by you.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto".

This coverage applies only if:

1. "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours: and

2. The loss is caused by "collision" or is covered under Coverage F - Comprehensive of this policy.

   However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto". Such coverage is provided under Coverage F of this policy.

   Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

C. **Towing and Labor Costs.** We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the limit of liability shown in the Declarations for Coverage I - Towing and Labor Costs as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

D. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object. Loss caused by

the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief, or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass;

If breakage of glass is caused by a "collision" you may elect to have it considered a loss caused by "collision".

E. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

   e. destruction

F. Airbag Replacement Coverage

   In addition, under Coverage F, we will pay to replace or repack an airbag that inflates due to malfunction in "your covered auto". Exclusion 2 does not apply to this additional insurance.

**TRANSPORTATION EXPENSES**

In addition, under Coverage F, we will pay, without application of a deductible, up to the greater of the following amounts:

Endorsement Symbol Number
A09014

1. $15 per day, to a maximum of $450; or

2. For a "your covered auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for that specific "your covered auto"; or

3. For a "non-owned auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for any one "your covered auto".

This applies only in the event of the total theft of "your covered auto" or a "non-owned auto". The coverage applies to a "your covered auto" only when the Declarations show that Coverage F is provided for that specific "your covered auto". The coverage applies to a "non-owned auto" if the Declarations show that Coverage F is provided for any "your covered auto".

We will pay:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto"; or

2. Loss of use expenses for which you become legally responsible in the event of a total theft of a "non-owned auto".

We will pay only those expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use, or, we pay for its loss.

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to equipment designed for the reproduction of sound. This exclusion (4.) does not apply if the equipment is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. TV antennas;

   b. awnings or cabanas; or

   c. equipment designed to create additional living facilities.

9. Loss to any of the following or their accessories:

   a. citizens band radio;

   b. two-way mobile radio;

   c. telephone; or

   d. scanning monitor receiver.

Endorsement Symbol Number
A09014

This exclusion (9.) does not apply if the equipment is permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto". This opening must be normally used by the auto manufacturer for the installation of a radio.

10. Loss to equipment designed or used for the detection or location of radar.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;

   b. repairing;

   c. servicing;

   d. storing; or

   e. parking;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property; or

   2. Amount necessary to repair or replace the property with like kind and quality.

   However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will mail the loss payee written notice at least 10 days before the effective date of cancellation.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable of the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in the General Provisions of the policy. If requested, the mediation must be completed before appraisal can occur.

B. In the event of a demand for appraisal, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

C. We do not waive any of our rights under this policy by agreeing to an appraisal.

## V. GENERAL PROVISIONS

The General Provisions Section is amended as follows:

A. The Changes provision is replaced by the following:

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductibles or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement

B. The Termination provision is replaced by the following:

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

However, this policy may not be cancelled during the first two months immediately following the date of issuance or continuation, except:

a. upon total destruction of "your covered auto";

b. upon transfer of ownership of "your covered auto";

c. after purchase of other insurance on "your covered auto"; or

d. if the named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

Endorsement Symbol Number
A09014

2.  We may cancel during the first 60 days this policy is in effect for any reasons other than nonpayment of premium. However, we may cancel for nonpayment of premium which results from issuance of a check which is subsequently not honored because of insufficient funds.

3.  After this policy is in effect for 60 days, or if this is a continuation policy, we will cancel only:

    a.  for nonpayment of premium; or

    b.  if your driver's license or that of:

        (1)  any driver who lives with you; or

        (2)  any driver who customarily uses "your covered auto";

        has been suspended or revoked. This must have occurred:

        (1)  during the policy period; or

        (2)  since the last anniversary of the original effective date if the policy period is other than 1 year; or

    c.  if the policy was obtained through material misrepresentation.

4.  We will cancel by mailing to the named insured shown in the Declarations at the address shown there:

    a.  at least 10 days notice if cancellation is for nonpayment of premium; or

    b.  at least 45 days notice in all other cases.

5.  Nonpayment of Premium.

    Nonpayment of premium shall mean failure to pay any premium or premium installment when due whether payable directly to us or through a premium financing plan or credit extension.

B.  **Termination.** If we decide not to continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown there.

    Notice will be mailed at least 45 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

C.  **Automatic Termination.** If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.

    If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D.  **Other Termination Provisions.**

    1.  If the law in effect in your state at the time this policy is issued or continued:

        a.  requires a longer notice period;

        b.  requires a special form or procedure for giving notice; or

        c.  modifies any of the stated termination reasons;

        we will comply with those requirements.

    2.  We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

    3.  If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

    4.  The effective date of cancellation stated in the notice shall become the end of the policy period.

B.  The following provision is added:

    **MEDIATION**

    In any claim filed with us for:

    1.  Loss resulting from "bodily injury" in an amount of $10,000 or less;

2. "Property damage"; or

3. Loss to "your covered auto" or any "non-owned auto";

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Insurance on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

## VI. SNOWMOBILE ENDORSEMENT AMENDMENT

If the Snowmobile Endorsement is attached to this policy, the following provision is added to the definition of "your covered snowmobile" found in section I.C.3. of that Endorsement:

This provision (C.3.) does not apply to the Damage To Your Auto Section.

Endorsement Symbol Number
A09014

## PERSONAL INJURY PROTECTION ENDORSEMENT - FLORIDA

We agree, subject to all the provisions of this endorsement and to all of the provisions of the policy except as modified herein, to provide Personal Injury Protection coverage as follows:

### SECTION I

### COVERAGE Q - PERSONAL INJURY PROTECTION

We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

    (a) 80% of "medical expenses", and

    (b) 60% of "work loss", and

    (c) "replacement services expenses", and

    (d) death benefits,

incurred as a result of "bodily injury" caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle" and sustained by:

    (1) You or any "family member" while "occupying" a "motor vehicle" or, while a "pedestrian", through being struck by a "motor vehicle"; or

    (2) any other person while "occupying" "your covered auto" or, while a "pedestrian", through being struck by "your covered auto".

### Exclusions

This coverage does not apply:

    (a) to you or any "family member" while "occupying" a "motor vehicle" of which you are the owner and which is not "your covered auto";

    (b) to any person while operating "your covered auto" without your express or implied consent;

    (c) to any person, if such person's conduct contributed +to his or her "bodily injury" under any of the following circumstances:

        (i) causing "bodily injury" to that person intentionally; or

        (ii) while committing a felony;

    (d) to any pedestrian, other than you or any "family member", not a legal resident of the State of Florida;

    (e) to any person, other than you, if such person is the owner of a "motor vehicle" with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

    (f) to any person, other than you or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" which is not "your covered auto" or from the owner's insurer;

    (g) to any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

### Definitions

When used in reference to this Section:

"bodily injury" means bodily injury, sickness or disease, including death at any time resulting therefrom.

"your covered auto" as used in this endorsement means:

1. Any vehicle shown in the Declarations;

2. Any of the following types of vehicles on the date you become the owner:

    a. A private passenger auto; or

    b. A pickup or van.

    This subparagraph 2. applies only if:

    a. you acquire the vehicle during the policy period; and

    b. if the vehicle you acquire is in addition to any vehicle shown in the Declarations, you ask us to insure it within 30 days after you become the owner; and

    c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

3. Any "motor vehicle" you do not own while used as a temporary substitute for any other

Endorsement Symbol Number
A09025

vehicle as described in this definition which is out of normal use because of its

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

"medical expenses" means reasonable expenses for "medically necessary" medical, surgical, x-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services. Such expenses shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his or her religious beliefs; however, this sentence does not affect the determination of what other services or procedures are medically necessary.

"medically necessary" means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

(a) in accordance with generally accepted standards of medical practice;

(b) clinically appropriate in terms of type, frequency, extent, site, and duration; and

(c) not primarily for the convenience of the patient, physician, or other health care provider.

"motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle and includes:

(a) A "private passenger motor vehicle," which is any motor vehicle which is a sedan, station wagon, or jeep-type vehicle and, if not used primarily for occupational, professional, or business purposes, a motor vehicle of the pickup, panel, van, camper, or motor home type.

(b) A "commercial motor vehicle," which is any motor vehicle which is not a private passenger motor vehicle.

The term "motor vehicle" does not include a mobile home or any motor vehicle which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority, or a political subdivision of the state.

"named insured" as used in this endorsement means the person(s) named in the Declarations of the policy in the section marked Named Insured and the spouse if a resident of the same household.

"occupying" means in or upon or entering into, getting out of, or alighting from.

"pedestrian" means a person while not an occupant of any self-propelled vehicle.

"replacement services expenses" means, with respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household.

"work loss" means, with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person. However, "work loss" does not include any loss after the death of an injured person.

## Limit of Liability; Application of Deductible; Other Insurance

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this coverage, for all loss and expense incurred by or on behalf of any one person who sustains "bodily injury" as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall in no event exceed $5,000.

Any amount payable under this coverage shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If one of the following deductible options is shown on the Declarations as applicable to this coverage, the deductible amount must be applied to 100 percent of the "medical expenses", "work loss" and "replacement services expenses" incurred by each "named insured" and, if elected, each dependent "family member". After the deductible is met, each "named insured" and, if elected, each dependent "family member" is eligible to receive up to $10,000 in total benefits. The deductible indicated below shall not apply to death benefits.

## Schedule Of Deductible Options

| Deductible Option | Deductible Amount | Deductible Amount Applicable To |
|---|---|---|
| A | $  250 | each "named insured" and each dependent "family member" |
| B | 500 | each "named insured" and each dependent "family member" |
| C | 1,000 | each "named nsured" and each dependent "family member" |
| E | 250 | each "named insured" |
| F | 500 | each "named insured" |
| G | 1,000 | each "named insured" |

### Pro-Rata Application

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this coverage, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro-rata share of the benefits paid and expenses incurred in processing the claim. If we make payments under this coverage and benefits are available under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense, we shall be entitled to recover from such other insurer our equitable pro-rata share of the benefits paid and expenses incurred in processing the claim.

### Policy Period, Territory

This coverage applies only to accidents which occur during the policy period:

(a) in the State of Florida; or

(b) as respects you or a "family member", while "occupying" "your covered auto" outside the State of Florida but within the United States of America, its territories or possessions or Canada, or

(c) as respects you, while "occupying" a "motor vehicle" of which a "family member" is the owner and for which security is maintained under the Florida Motor Vehicle No-Fault Law, as amended, outside the State of Florida but within the United States of America, its territories or possessions or Canada.

### Conditions

The conditions below apply in addition to those in the policy that apply to all coverages. In the event of conflict, the conditions below control over those in the policy.

1. Notice. In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable.

   If any injured person or his or her legal representative shall institute legal action to recover damages for "bodily injury" against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his or her legal representative.

2. Action Against Us. No action may be brought against us unless, there has been full compliance with all terms of this coverage and any statute providing a condition precedent to filing such an action. No legal action may be brought against us until 30 days after the required notice of accident and reasonable proof of claim has been filed with us.

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. As soon as practicable the person making claim shall give to

Endorsement Symbol Number
A09025

us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person, if requested. If the person unreasonably refuses to submit to an examination we will not be liable for subsequent personal injury protection benefits.

Whenever a person making claims is charged with committing a felony, we shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

4. Reimbursement and Subrogation. In the event of payment to or for the benefit of any injured person under this endorsement:

   (a) we are subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

   (b) we shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while "occupying" or while a "pedestrian" through being struck by, such commercial motor vehicle.

   (c) It is understood that the GENERAL PROVISION regarding OUR RIGHT TO RECOVER PAYMENT specifically applies to these coverages to the fullest extent allowed by law.

5. Special Provision for Rented or Leased Vehicles. Notwithstanding any provision of this coverage to the contrary, if you rent a vehicle under a rental or lease agreement satisfying the requirements of Florida Statute 627.7263, as amended, and naming this policy as the primary policy, these coverages shall be applied as if that rented or leased vehicle were "your covered auto."

## SECTION II

## COVERAGE Q1 - PERSONAL INJURY PROTECTION

## EXCLUSION OF WORK LOSS BENEFIT

If Coverage Q1 is shown on the Declarations, the provisions of Section I - Coverage Q apply except coverage for "work loss" does not apply to each "named insured" and each dependent "family member".

## SECTION III

## COVERAGE Q2 - PERSONAL INJURY PROTECTION

## EXCLUSION OF WORK LOSS BENEFIT

If Coverage Q2 is shown on the Declarations, the provisions of Section I - Coverage Q apply except coverage for "work loss" does not apply to each "named insured".

## SECTION IV

## EXTENDED PERSONAL INJURY PROTECTION

### (Option R1 and R2)

If an Extended Personal Injury Protection coverage option (R1 and R2) is shown on the Declarations, the Personal Injury Protection provided under Section I of this endorsement is amended as follows for benefits to you and each "family member":

1. If Option R1 is shown, the first paragraph of Section I is amended by replacing the term "80% of" in item (a) with the term "100% of".

2. If Option R2 is shown, the first paragraph of Section I is amended by replacing the term "80% of" in item (a) with the term "100% of" and replacing the term "60% of" in item (b) with the term "80% of".

This Section is subject to all the terms and provisions of Section I.

## SECTION V

## MODIFICATION OF POLICY COVERAGES

Any automobile medical payments insurance or any uninsured motorists coverage afforded by the policy shall be excess over any personal injury protection benefits paid or payable or which would be available but for the application of a deductible.

Regardless of whether the full amount of personal injury protection benefits have been exhausted, any medical payments insurance afforded by this policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% medical expenses contained in Section I but shall not be payable for the amount of the deductible selected.

## SECTION VI

## PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums

applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the Declarations the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

Endorsement Symbol Number
A09025

## UNINSURED MOTORISTS COVERAGE – FLORIDA (NON-STACKED)

I.  The Uninsured Motorists Section, Coverage
    D, is replaced by the following:

### COVERAGE D1 – UNINSURED MOTORISTS (BODILY INJURY)

#### INSURING AGREEMENT

A.  We will pay damages which an "insured" is
    legally entitled to recover from the owner
    or operator of an "uninsured motor
    vehicle" because of "bodily injury":

    1.  Sustained by an "insured"; and

    2.  Caused by an accident.

The owner's or operator's liability for these
damages must arise out of the ownership, main-
tenance or use of the "uninsured motor
vehicle".

Any judgment for damages arising out of a suit
brought without our written consent is not
binding on us.

B.  "Insured" as used in this coverage means:

    1.  You or any "family member".

    2.  Any other person "occupying" "your
        covered auto".

    3.  Any person for damages that person is
        entitled to recover because of "bodily
        injury" to which this coverage applies
        sustained by a person described in 1. or
        2. above.

C.  "Uninsured motor vehicle" means a land
    motor vehicle or trailer of any type:

    1.  To which no bodily injury liability bond
        or policy applies at the time of the acci-
        dent.

    2.  To which a bodily injury liability bond
        or policy applies at the time of the acci-
        dent but the amount paid for "bodily in-
        jury" under that bond or policy to an
        "insured" is not enough to pay the full
        amount the "insured" is legally entitled
        to recover as damages.

    3.  Which is a hit and run vehicle whose
        operator or owner cannot be identified
        and which hits or which causes an acci-

dent resulting in "bodily injury "
without hitting:

a.  you or any "family member";

b.  a vehicle which you or any "family
    member" are "occupying"; or

c.  "your covered auto".

If there is no physical contact with the
hit and run vehicle, the facts of the acci-
dent must be proved. We will only ac-
cept competent evidence other than
the testimony of a person making
claims under this or any similar
coverage.

4.  To which a bodily injury liability bond
    or policy applies at the time of the acci-
    dent but the bonding or insuring com-
    pany:

    a.  denies coverage; or

    b.  is or becomes insolvent.

However, "uninsured motor vehicle" does
not include any vehicle or equipment:

1.  Owned by or furnished or available for
    the regular use of you or any "family
    member" unless it is a "your covered
    auto" to which Coverage A of the
    policy applies and bodily injury liability
    coverage is excluded for any person
    other than you or any "family member"
    for damages sustained in the accident
    by you or any "family member".

2.  Owned or operated by a self-insurer
    under any applicable motor vehicle law.

3.  Owned by any governmental unit or
    agency.

4.  Operated on rails or crawler treads.

5.  Designed mainly for use off public
    roads while not on public roads.

6.  While located for use as a residence or
    premises.

#### EXCLUSIONS

A.  We do not provide Uninsured Motorists
    Coverage for "bodily injury" sustained by
    any person:

1. While "occupying" any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent. However, this exclusion (A.2.) does not apply:

   a. If such settlement does not prejudice our right to recover payment; or

   b. To a settlement made with the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle".

3. While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   1. workers' compensation law; or

   2. disability benefits law.

## LIMIT OF LIABILITY

### A. Single Limit

If the Declarations or the Schedule of this endorsement show a single limit of liability for Coverage D1, applicable to the "your covered auto" involved in the accident, this limit is our maximum limit of liability for all damages for "bodily injury" resulting from that accident. If there is no "your covered auto" involved in the accident, then our maximum limit of liability for all damages for "bodily injury" resulting from that accident will be the highest limit of liability shown in the Declarations for coverage D1 applicable to any one "your covered auto".

This is the most we will pay regardless of the number of:

a. "Insureds";

b. Claims made;

c. Vehicles or premiums shown in the Declarations; or

d. Vehicles involved in the accident.

However, no one will be entitled to receive duplicate payments for the same element of loss.

### B. Split Limits

If the Declarations or the Schedule of this endorsement show separate limits of liability for each person and each accident for Coverage D1:

1. When the "insured" is "occupying" "your covered auto" at the time of the accident:

   a. The limit of liability shown for each person for Coverage D1 applicable to that "your covered auto" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in that accident; and

   b. Subject to this limit for each person, the limit of liability shown for each accident for Coverage D1 applicable to that "your covered auto" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

2. When the "insured" is not "occupying" "your covered auto" at the time of the accident:

   a. The highest limit of liability for each person for Coverage D1 applicable to any of "your covered autos" is our maximum limit of liability for all damages, including damage for care, loss of services or death, arising out of "bodily injury" sustained by any one person in that accident; and

   b. Subject to this limit for each person, the highest limit of liability

for each accident for Coverage D1 applicable to any of "your covered autos" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

This is the most we will pay regardless of the number of:

a. "Insureds";

b. Claims made;

c. Vehicles or premiums shown in the Declarations; or

d. Vehicles involved in the accident.

However, no one will be entitled to receive duplicate payments for the same elements of loss.

C. Any coverage afforded under this endorsement shall apply over and above any amounts available to an "insured" because of the "bodily injury":

1. From or on behalf of persons or organizations who may be legally responsible.

   This includes all sums paid under Coverage A.

2. Under any of the following:

   a. Workers' compensation law;

   b. Disability benefits law or similar law;

   c. No-fault coverage; or

   d. Automobile medical payments coverage.

D. Any payment under this coverage will reduce any amount that person is entitled to recover for the same element of loss under Coverage A of the policy.

E. In no event will an "insured" be entitled to receive duplicate payment for the same element of loss.

**OTHER INSURANCE**

If there is other applicable similar insurance available under this policy or any other policy:

1. Any recovery for damages sustained by you or any "family member":

   a. while occupying a vehicle owned by you or any "family member" may equal, but not exceed, the limit of

liability for Uninsured Motorists Coverage applicable to that vehicle;

b. while occupying a vehicle not owned by you or any "family member" may equal, but not exceed, the sum of:

   (1) the limit of liability for Uninsured Motorists Coverage applicable to the vehicle you or any "family member" were occupying at the time of the accident; and

   (2) the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member";

c. while not occupying any vehicle may equal, but not exceed, the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member".

2. Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages;

then the matter may be:

1. Mediated, in accordance with the Mediation provision contained in the General Provisions of the policy, if damages resulting from "bodily injury" are for $10,000 or less; or

2. Arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

B. Both parties must agree in writing to arbitration. Otherwise, all disputes will be resolved in a court of competent jurisdiction. If both parties agree to arbitration, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

C. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

D. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. The arbitrators must follow the rules of substantive law that would apply in the courts of the State of Florida. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

E. Instead of this method, we and the "insured" may agree to use another method of arbitration.

### FLORIDA ARBITRATION ACT

If we and an "insured" agree to arbitration, the Florida Arbitration Act will not apply.

### II. DUTIES AFTER AN ACCIDENT OR LOSS

The following paragraph is added to the section "Additional Duties for Uninsured Motorists Coverage":

A person seeking Uninsured Motorists Coverage under Section 2. of the definition of "uninsured motor vehicle" must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle."

### III. GENERAL PROVISIONS

The following is added to the section "Our Right To Recover Payment":

C. Our rights do not apply under paragraph A. with respect to coverage under Section 2. of the definition of "uninsured motor vehicle" if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover advance payment.

### SCHEDULE

(Applicable only if not shown on the Declarations)

Auto No.                         Limits of Liability

TIC
PL-7102 Rev. 12-93                    Page 4 of 4

Endorsement Symbol Number
A09051

## Civil Remedy Notice of Insurer Violations

Filing Number: **211044**

Filing Accepted: **7/16/2012**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **TRAVELERS** |
| Street Address: | **PO BOX 30180** |
| City, State Zip: | **TAMPA, FL  33630** |
| Email Address: | |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **DARRYL VACHON** |
| Policy #: | **9852776181011** |
| Claim #: | **HHA3766** |

### Attorney

| | |
|---|---|
| Name: | **ROBERT GRODE** |
| Street Address: | **70 4TH STREET NW** |
| City, State Zip: | **WINTER HAVEN, FL  33881** |
| Email Address: | **RGRODE@LOBLAWYERS.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | **,** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**DAVID WATESKA**

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 11/2007

**EXHIBIT B**

## Civil Remedy Notice of Insurer Violations

Filing Number:        **211044**

### Reason for Notice

Reasons for Notice:

   Claim Denial

   Claim Delay

   Unsatisfactory Settlement Offer

   Unfair Trade Practice

PURSUANT TO SECTION 624.155, F.S.  please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 624.155(1)(b)(2) | Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made. |
| 624.155(1)(b)(3) | Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. |
| 626.9541(1)(i)(1) | Attempting to settle claims on the basis of an application, when serving as a binder or intended to become a part of the policy, or any other material document which was altered without notice to, or knowledge or consent of, the insured. |
| 626.9541(1)(i)(2) | A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy. |
| 626.9541(1)(i)(3)(c) | Failing to acknowledge and act promptly upon communications with respect to claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(e) | Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |
| 626.9541(1)(i)(3)(g) | Failing to promptly notify the insured of any additional information necessary for the processing of a claim. |
| 626.9541(1)(i)(3)(h) | Failing to clearly explain the nature of the requested information and the reasons why such information is necessary. |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

LIABILITY COVERAGE
UNINSURED/UNDERINSURED MOTORIEST COVERAGE
ALL ADDITIONAL COVERAGE PROVISIONS
ALL COVERAGES PROVIDED BY ENDORSEMENT OR RIDER
THE DECLARATION PAGE
LOSS PAYMENT OR SETTLEMENT PROVISION
DUTIES IN EVENT OF LOSS POLICY PROVISION
ALL TERMS AND CONDITIONS OF SECTION 1 OF INSURANCE POLICY
THE INSURANCE POLICY'D DEFINITION SECTION
THE INSURANCE POLICY'S EXCLUSION OF COVERAGE PROVISIONS
ALL INSURANCE POLICY PROVISIONS THAT PROVIDE COVERAGE TO THE INSURED PROPERTY
ALL POLICY PROVISIONS

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

MR. VACHON WAS INVOLVED IN A MOTOR VEHICLE CRASH ON JUNE 4, 2011. HE WAS REAR-ENDED BY AN UNINSURED DRIVER. AS A RESULT OF THE CRASH, MR. VACHON SUSTAINED INJURIES TO HIS NECK, BACK AND HEAD. MR. VACHON UNDERWENT TREATMENT WITH A CHIROPRACTOR WHICH HAS DETERMINED THAT HE HAS SUSTAINED PERMANENT INJURIES AS A RESULT OF THE MOTOR VEHICLE CRASH. MR. VACHON'S TREATING PHYSICIANS HAVE ALSO INDICATED THAT HE WILL REQUIRE ADDITIONAL MEDICAL CARE A TIME LIMITED DEMAND WAS SENT VIA CERTIFIED MAIL TO THE UNINSURED MOTORIST  ARRIER, TRAVELERS ON DECEMBER 2,2011. THE DEMAND WAS RECEIVED BY TRAVELERS ON DECEMBER 5, 2011, CONFIRMED VIA CERTIFIED RETURN RECEIPT. TRAVELES HAS NOT CURED THE REQUIREMENTS OF OUR DEMAND. TRAVELERS  HAS NOT TENDERED THE UNINSURED MOTORIST POLICY LIMITS.
WE ARE NOW FILING A CIVIL REMEDY NOTICE OF INSURER VIOLATION DUE TO TRAVELERS HANDLING OF THIS CASE TO INCLUDE THE FOLLOWING:
1. FAILING TO PAY AND/OR TIMELY RESOLVE THIS CLAIM WHEN TRAVELERS, ITS AGENTS/ADJUSTERS, KNEW OR SHOULD HAVE KNOWN THAT THE CLAIM EXCEEDED THE INSURANCE POLICY LIMITS. TRAVELERS AND ITS AGENTS/ADJUSTERS, KNEW OR SHOULD HAVE KNOWN LIABILITY WAS NOT AN INSURER'S VIOLATION AS YOU UNDERSTAND THEM AT THIS TIME.
FLORIDA POLICY FORM 9810.7, SECTION III, PAGE 18:
"WE WILL PAY DAMAGES FOR BODILY INJURY AN INSURED IS LEGALLY ENTITLED TO COLLECT FROM THE OWNER OR DRIVER OF AN UNINSURED MOTOR VEHICLE"
REFERENCE TO SPECIFIC POLICY LANGUAGE THAT IS RELEVANT TO THE VIOLATION, IF ANY. IF THE PERSON BRINGING THE CIVIL ACTION IS A
THIRD PARTY CLAIMANT, SHE OR HE SHALL NOT BE REQUIRED TO REFERENCE THE SPECIFIC POLICY LANGUAGE IF THE AUTHORIZED INSURER
HAS NOT PROVIDED A COPY OF THE POLICY TO THE THIRD PARTY CLAIMANT PURSUANT TO WRITTEN REQUEST.
REASONS FOR NOTICE:
PURSUANT TO SECTION 624.155, F.S. PLEASE INDICATE ALL STATUTORY PROVISIONS ALLEGED TO HAVE BEEN VIOLATED.
CLAIM DELAY
CLAIM DENIAL
UNSATISFACTORY SETTLEMENT OFFER
CIVIL REMEDY NOTICE OF INSURER VIOLATIONS
FILING NUMBER: 181870
DFS-10-363
REV. 11/2007
ISSUE IN THIS MOTOR VEHICLE CRASH. T5RAVELERS AND ITS AGENTS/ADJUSTERS, KNEW OR SHOULD HAVE KNOWN THAT ITS INSURED SUFFERED SERIOUS BODILY INJURIES AS A DIRECT AND PROXIMATE RESULT OF THIS MOTOR VEHICLE CRASH.
2. FAILURE TO COMMUNICATE AND RESPOND TIMELY TO THE SETTLEMENT DEMAND.
3. FAILURE TO PROMPTLY REQUEST AN EXTENSION OF TIME TO COMPLY WITH THE SETTLEMENT DEMAND.
4. CLAIM DELAY.
5. CLAIM DENIAL.
6. LOOKING FOR WAYS TO DENY RECOVERY.
7. LOOKING FOR WAYS TO DELAY FULL RECOVERY.

DFS-10-363
Rev. 11/2007

8. HOLDING BACK PORTIONS OF CLAIM CLEARLY OWED.
9. NOT ADJUSTING THE CLAIM AND EVALUATING THE LOSS PROPERLY, PROMPTLY AND FAIRLY.
10. FAILING TO IMPLEMENT PROPER STANDARDS FOR THE ADJUSTMENT AND INVESTIGATION OF CLAIMS.
11. ESTABLISHING SEVERITY CONTROL INITIATIVES AND OTHERWISE ESTABLISHING A CULTURE OF NOT FULLY AND PROMPTLY PAYING CLAIMS FOLLOWING LOSSES.
12. REQUESTING IRRELEVANT OR REDUNDANT INFORMATION TO DELAY CLAIMS.
13. NOT TRAINING, SUPERVISING, OR MANAGING ADJUSTERS PROPERLY SO THAT PROMPT AND FULL PAYMENTS ARE MADE, BUT RATHER PLACING THE COMPANY'S INTERESTS BEFORE THE POLICYHOLDER'S INTERESTS.
14. FAILURE TO ADEQUATELY REVIEW AND CONSIDER MEDICAL DOCUMENTATION THAT SUPPORTS THEIR INSURED'S CLAIM.
15. PLACED TRAVELERS INTERESTS OVER AND ABOVE THE INTEREST OF THEIR INSURED.
16. FAILURE TO PAY ECONOMIC AND NON-ECONOMIC DAMAGES UNDER THE POLICY.
IN ORDER TO CURE THE DEFECT, TRAVELERS  MUST DO ALL OF THE FOLLOWING:
1. TENDER THE UNINSURED MOTORIST POLICY LIMITS OF FIFTY THOUSAND DOLLARS WITHIN THE TIME PRESCRIBED BY SECTION 624.155, F.D.; AND
2. MAKE THE CHECK PAYABLE AS FOLLOWS: DARRYL VACHON, INDIVIDUALLY, AND LILLY, O'TOOLE & BROWN, LLP (OUR TAX ID NO. IS 20-1385413).

**Comments**

| User Id | Date Added | Comment |
| --- | --- | --- |